HALLADAY v. HAAS et al.

(Supreme Court, Appellate Division, Fourth Department.   November 15, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS—WORK AND LABOR.

Evidence *held* insufficient to establish a contract of hiring between plaintiff and decedent as to the running and management of decedent's farm, or any agreement that he should receive for his labor anything more than he received from the proceeds of the farm, so as to entitle him to maintain a claim for his services.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903, 1858–1876; Dec. Dig. § 221.*]

2. WILLS (§ 68*)—CONTRACT TO WILL—EVIDENCE.

Evidence *held* insufficient to warrant a finding that decedent agreed to leave claimant a farm in consideration of claimant's services in running and managing the same during decedent's lifetime.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 178–182; Dec. Dig. § 68.*]

Appeal from Order of Surrogate, Jefferson County.

Claims by Joel A. Halladay against Fred V. Haas and Eleanor Halladay, as administrators of the estate of Sherman Halladay, deceased. From a judgment in favor of defendants, dismissing the complaint, entered on a surrogate's order affirming a referee's report in favor of defendants, plaintiff appeals. Affirmed.

The action was commenced on the 28th day of October, 1907, by the filing of a verified claim by the plaintiff against the estate of Sherman Halladay, deceased. The defendant administrators rejected such claim on December 16, 1907. Consent was filed that the surrogate of Jefferson county might hear and determine the claim on the judicial settlement of the administrators' account. A second claim was presented on January 21, 1908, was rejected February 15, 1908, and a like consent was filed that the surrogate might hear and determine the same. On March 25, 1908, the parties agreed in writing that the matters in controversy be referred to a referee, to hear, try, and determine the same. On May 14, 1908, the surrogate approved the reference, and an order was duly entered to that effect. The referee did hear, try, and determine the matters in controversy, with the result above indicated.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Thomas Burns, for appellant.
Harold L. Hooker, for respondents.

McLENNAN, P. J. [1] The first claim presented by the plaintiff amounted to $18,601.44, less a credit of $2,000, and was for work, labor, and services alleged to have been performed by the plaintiff in carrying on a farm of about 200 acres owned by the decedent from March 1, 1886, to August 7, 1906, a period of 20 years, and which services it is claimed were of the value of $15,343.75. There was also a claim for borrowed money, personal property furnished to decedent, and moneys paid out for him from 1885 to 1902, amounting to $2,485; also a part of such claim was for notes alleged to have been given by the plaintiff to renew notes of decedent, notes given for goods purchased for the benefit of decedent, amounting to $771.69, making

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the total of such first claim $18,601.44. There was credited upon such claim, extending over a period of 20 years, $100 a year, amounting to $2,000, leaving a balance of $16,601.44. No items of such credit are stated. It will be observed that the chief item of this claim is for work, labor, and services, amounting to $15,343.75, which it is claimed the plaintiff is entitled to receive because of working and carrying on the decedent's farm for a period of 20 years. The referee has found that the plaintiff's evidence was insufficient to establish any contract of hiring, or to show that there was any agreement or understanding between the plaintiff and the decedent that he should receive compensation for services rendered by him, other than such as he received from the proceeds of the farm.

I think this finding of the referee is abundantly supported by the evidence. Concededly, 'the deceased owned a farm in the town of Clayton of 216 acres. In 1885 he left the farm with his wife and a younger son and daughter, and went to reside in the village of Depauville, two or three miles distant from the farm, and the plaintiff and his wife moved onto the farm. It is undisputed that he worked it in the ordinary way; that, in addition to his own work, he hired such other help as was necessary. The evidence fails to show with any degree of certainty that there ever was any agreement of hiring between the plaintiff and the decedent. There are some vague statements made by some of the neighbors, most of them relatives of the plaintiff, to the effect that the deceased said he was to pay $500 a year to his son for his services, that he would be well paid for his services, and that when he, the deceased, got through, the plaintiff would have the farm for the services which he rendered. Very little effect can be given to the statement of the witnesses that he was to have $500 a year for his services, because the plaintiff himself did not so understand the bargain, because he presented a claim for $750 a year for the time he worked upon such farm. But, aside from all that, the evidence conclusively shows that the plaintiff was working his father's farm, receiving the proceeds therefrom, applying the proceeds to his own use and to that of his father. In other words, that both families were getting their living off the farm, and that the plaintiff had whatever was left. It appears conclusively that the plaintiff received the checks for the milk—in the year 1899 a check for $145.34, in 1901 a check for $180.91, in 1902 a check for $132.21, in 1903 a check for $313.93, in 1904 a check for $215.52, and for 1905 checks payable to his order amounting to $385, and during the year 1906, prior to the date of Sherman Halladay's death, he received checks payable to his order amounting to $215.29. It also appeared that in 1889 plaintiff received for hay $384.06; in 1903, $156.02; in 1904, $981.79; between the 26th day of December, 1904, and the 10th day of July, 1905, plaintiff received for hay raised upon the farm checks payable to his order amounting to $1,104.32.

So far as the evidence discloses, these moneys and others, to which the referee calls attention in his opinion and findings, were received by the plaintiff, and the major amount of the moneys were used by the plaintiff. It appears that at certain times the plaintiff gave to the

decedent certain moneys, delivered to him certain of the produce raised upon the farm, but no account was kept between the plaintiff and his father—nothing to show how much he turned over to the father, nothing to show the value of the produce delivered to the father, and presumably the plaintiff gave all the proof that he could to establish such payments. It seems to me that it would be idle to attempt to base upon the evidence in this case a finding to the effect that the plaintiff was to receive by agreement with his father any specific sum per month or by the year for the services rendered by him on the farm. There is no basis by which it can be ascertained what amount the plaintiff received from the proceeds of the farm, what he retained for his own use and purposes, and what he delivered to the decedent. So that it cannot be said that the reasonable value of the plaintiff's services was not fully paid by the proceeds of the farm which he devoted to his own use.

The same is true of the other items in plaintiff's claim. The notes referred to were all made by the plaintiff, and, if indorsed or signed by the deceased, were so indorsed or signed by the plaintiff, because the deceased could not write his name, and the proceeds of a portion of those notes, at least, so far as appears, was applied for the use and benefit of the plaintiff. Just exactly how much cannot be determined by the evidence, because, as before said, neither of the parties kept any account during this entire period, extending over 20 years.

The second claim filed by the plaintiff is for a judgment amounting to $627.15, recovered against the plaintiff. It is claimed that such judgment was really a claim which the estate should pay. The facts are that on or about June 26, 1906, the plaintiff made a promissory note for $500 and signed thereto the name of Sherman Halladay. The plaintiff indorsed said note and took it to the National Exchange Bank at Clayton, N. Y., and with it took up a note given by him to one Sternberg for $77.13, a note given by him to A. D. Lowe for store account amounting to $59.69, a note signed with Sherman Halladay's name by the plaintiff and given to A. D. Lowe for store account amounting to $169.35, and received from said bank $193.83 in cash.

There is absolutely no proof that the plaintiff was authorized to sign the deceased's name to the said $500 note, or that the indebtedness for which said note was given was the indebtedness of the deceased, or that the money received by the plaintiff on said note was paid or expended to or for the decedent. An action was commenced upon such note, and it was claimed that the administrators were liable, and the complaint was dismissed as to them, and judgment rendered solely against the plaintiff for that amount.

[2] It is claimed that there was an agreement between the deceased and the plaintiff that at the decedent's death he would will the farm to the plaintiff. I think the evidence utterly fails to establish any such agreement on the part of the deceased. From the evidence it is hardly possible to conclude that the decedent intended that the plaintiff should have his entire estate at his death, to wit, the farm, and that thus he would disinherit his daughter, the plaintiff's sister by a first marriage, and a son by a second marriage. But it is idle to

indulge in speculation. There is no evidence in this case which proves or tends to prove that the decedent ever agreed to pay his son wages for work, labor, and services upon the farm, or that he ever agreed that the farm should be his because of the work and services rendered thereon.

I conclude that the referee was right in finding that there was no sufficient evidence to establish a contract of hiring between the plaintiff and the deceased as to the running and management of the farm, and also that there was no agreement or understanding between the plaintiff and the decedent that the plaintiff should receive any other compensation for his services upon such farm than he did receive from the proceeds and avails thereof, and also that the avails of the notes signed by the plaintiff or signed in the name of the decedent by the plaintiff were applied by him for his own use and benefit. It seems incredible that the decedent should have intended that the plaintiff should receive his entire estate, and more, because of the services rendered by him as claimed, and that thereby his other heirs and next of kin should be disinherited, or prevented from participating in his estate.

Under the authorities, which are familiar to every member of this court, I think it is proper to say that upon the evidence in this case the estate of the decedent cannot be confiscated. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.